# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| KENNETH DUANE SCHMIDT, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN,[1] ) <br> Acting Commissioner of Social Security, ) <br> ) <br> Defendant. ) <br> _____ ) | CIVIL ACTION <br><br> No. 12-1272-JWL |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Social Security Disability (SSD) benefits under sections 216(i) and 223 of the Social Security Act. 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the final decision of the Commissioner.

**I. Background**

---

[1]On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Colvin is substituted for Commissioner Michael J. Astrue as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff applied for SSD, alleging disability beginning December 10, 2007. (R. 20, 144-55).[2] In due course, Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits. He alleges the Administrative Law Judge (ALJ) erred as a matter of law in failing to consider a third-party statement completed by an employee of the Social Security Administration; erred in finding Plaintiff's mental impairments not severe at step two of the Commissioner's five-step sequential evaluation process; and mechanically applied the age categories when considering whether the Medical-Vocational Guidelines direct a finding of "disabled."

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

---

[2]Although the record contains an application for Supplemental Security Income (R. 151-53), the decision does not mention such an application, and neither party alludes to it in his or her brief.

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's RFC. 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process--determining at step four whether, in light of the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds no error in the decision at issue. Because the court prefers to order its review in accordance with the five-step sequential evaluation process, it addresses the issues in a different order than presented in Plaintiff's brief, and begins with consideration of Plaintiff's allegation that it was error at step two of the process to find his mental impairments are not severe.

## II.  Evaluation of Plaintiff's Mental Impairments

Plaintiff claims that the ALJ based his determination that Plaintiff's mental impairment is not severe on Plaintiff's statement that he is able to follow instructions and maintain attention for thirty minutes, but he argues that the Program Operations Manual System (POMS) "provides that mental abilities critical for performing unskilled work

include the ability to maintain attention for extended periods of 2-hour segments (concentration is not critical)." (Pl. Br. 14). He then argues that because the ability to maintain attention for 2 hours at a time is a critical requirement for unskilled work, Plaintiff is unable to perform unskilled jobs and must therefore be found to have a "severe" mental impairment, and the ALJ's step two finding of non-severity is not supported by substantial evidence. In a follow-on argument, Plaintiff asserts that because the POMS requires the ability to maintain attention for 2-hour segments, the ALJ's determination that the record did not show Plaintiff was limited in the ability to perform basic mental work-related activities was not a good reason to discount Dr. Witt's opinion.

The Commissioner argues that the ALJ properly considered Plaintiff's mental impairments at step two, and properly applied the Commissioner's psychiatric review technique. She points out that in his determination that Plaintiff has no limitations in concentration, persistence, and pace the ALJ relied both upon Plaintiff's report that he is able to follow instructions and maintain attention for thirty minutes and upon a consultative examination revealing no cognitive or memory impairments that would interfere with working. She points out Plaintiff's acknowledgment that the POMS does not have the force of law, and argues that it is Plaintiff's burden to prove a severe impairment, that he has not done so, that he has admitted an ability to maintain attention, and that his testimony at the hearing included no mental limitations. With regard to Dr. Witt's opinion, the Commissioner argues that the ALJ properly discounted that opinion

5

because it was inconsistent with the examining psychologist's opinion and with Plaintiff's report and testimony at the hearing.

### A. Standard for Evaluating Mental Impairments at Step Two

A mental impairment is not considered severe if it does not significantly limit plaintiff's ability to do basic mental work-related activities: understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521. The Tenth Circuit has interpreted the regulations and determined that to establish a "severe" impairment or combination of impairments at step two of the sequential evaluation process, plaintiff must make only a "de minimis" showing. Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997). Plaintiff need only show that an impairment would have more than a minimal effect on his ability to do basic work activities. Williams, 844 F.2d 748, 751 (10th Cir. 1988). However, he must show more than the mere presence of a condition or ailment. Hinkle, 132 F.3d at 1352 (citing Bowen v. Yuckert, 482 U.S. 137, 153 (1987)). If an impairment's medical severity is so slight that it could not interfere with or have a serious impact on plaintiff's ability to do basic work activities, it could not prevent plaintiff from engaging in substantial work activity and will not be considered severe. Hinkle, 132 F.3d at 1352. The determination of severity at step two is based on medical factors alone, and not vocational factors such as age, education, or work experience. Williamson v. Barnhart, 350 F.3d 1097, 1100 (10th Cir. 2003). A claimant must provide medical evidence that he had an impairment

and how severe it was during the time the claimant alleges he was disabled. 20 C.F.R. § 404.1512(c).

The Commissioner has promulgated a Psychiatric Review Technique for evaluating mental impairments. 20 C.F.R. § 404.1520a. In evaluating the severity of mental impairments at steps two, the technique provides for rating the degree of functional limitation in each of four broad mental functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. Id. § 404.1520a(c). After rating the degree of limitation in each functional area, the Commissioner determines the severity of plaintiff's mental impairments. Id. § 404.1520a(d). When the first three functional areas are rated as "none" or "mild," and the fourth area is rated as "none," the agency will conclude at step two of the sequential evaluation process that plaintiff's mental impairments are not severe "unless the evidence otherwise indicates that there is more than a minimal limitation in [plaintiff's] ability to do basic work activities." Id. § 404.1520a(d)(1).

**B.     Analysis**

Here, the ALJ found Plaintiff has no limitations in the first three functional areas, and no episodes of decompensation. Therefore, he found Plaintiff's mental impairment, adjustment disorder, is not severe. (R. 23). Plaintiff argues, however, that it was error to find no limitations in the functional area of concentration, persistence, and pace because the ALJ also found that Plaintiff is able to follow instructions and maintain attention for only 30 minutes. Therefore, he argues that his mental impairment is severe, and in fact, if

7

the ALJ had included a limitation to maintain attention for only 30 minutes at a time in his hypothetical question of the vocational expert, the expert would have testified that no jobs are available, and the ALJ would have found Plaintiff disabled.

The main problem with Plaintiff's argument is that it rests on a false premise--that the ALJ found Plaintiff can maintain attention for only 30 minutes. Plaintiff misreads the decision. First, the ALJ supported his finding of no limitations in concentration, persistence, and pace with Plaintiff's report that "he is able to follow instructions and maintain attention at least 30 minutes." (R. 23) (citing Ex. 13E) (emphasis added). Although Plaintiff's report stated only that he could pay attention for "30 min;" in context, the ALJ's characterization is supported by the evidence. (R. 257). In Exhibit 13E Plaintiff reported that he finished what he started such as "a conversation, chores, reading, watching a movie." Id. He stated that he follows written instruction "very well," id., and he stated numerous times that he does not need reminders to complete tasks such as grooming, personal needs, taking medicine, or going places. (R. 254, 256). Clearly, Plaintiff's report suggests that "he is able to follow instructions and maintain attention at least 30 minutes," as the ALJ noted.

Second, the ALJ supported his finding with the fact that Dr. Schwartz's consultative examination did not reveal any cognitive or memory impairment that would interfere with Plaintiff's working. (R. 23) (citing Ex. 6F). The record supports this finding also. (R. 337) ("I did not detect any cognitive or memory impairment which would interfere with his working.").

8

Third, the ALJ relied upon Plaintiff's report that he could maintain attention for at least 30 minutes not specifically to show that Plaintiff could maintain attention for 30 minutes, but to demonstrate that Plaintiff did not allege significant limitations in concentration, persistence, and pace. Further, in discounting Dr. Witt's opinion the ALJ specifically noted that Plaintiff did not describe mental limitations when given the opportunity to suggest limitations at the hearing. Finally, the ALJ found that Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms are not credible, and went on to find only two of Plaintiff's allegations credible--that he is not limited in his ability to sit, and that at a maximum he is able to lift 25 to 30 pounds. (R. 25). Plaintiff's assertion that he is only able to pay attention for 30 minutes was one of Plaintiff's many allegations that the ALJ found not credible. Contrary to the argument in Plaintiff's brief, the ALJ did not find that Plaintiff can maintain attention for only 30 minutes.

The POMS section to which Plaintiff appeals does not require a different result. As Plaintiff acknowledged, the POMS does not have the force and effect of law, but is an interpretation of the statutory and regulatory law. <u>Davis v. Sec'y of Health and Human Servs.</u>, 867 F.2d 336. 340 (6th Cir. 1989); <u>see also</u>, <u>McNamar v. Apfel</u>, 172 F.3d 764, 766-67 (10th Cir. 1999) (affirming the Commissioner's decision because the plaintiff had not shown that the agency's interpretations as expressed in the POMS were arbitrary, capricious, or contrary to law). Moreover, even accepting Plaintiff's argument that a

9

claimant is disabled if he is unable to maintain attention for 2-hour segments, the ALJ did not find that Plaintiff is unable to maintain attention for 2-hour segments.

Finally, Plaintiff has shown no error in the ALJ's reasons for according only "little weight" to Dr. Witt's opinion. The ALJ discounted Dr. Witt's opinion because evidence available at the hearing did not show a limited ability to perform basic mental work activities, and because "the claimant did not describe limitations from his adjustment disorder [(his mental impairment)] at his hearing." (R. 28). Although Plaintiff alleges that he is limited to paying attention only 30 minutes and points to the ALJ's acknowledgment of that <u>allegation</u>, the ALJ found that Plaintiff's allegations are not credible, and Plaintiff has shown no error in that finding. Plaintiff has shown no error in the ALJ's evaluation of his mental impairment.

### III. Third Party Observations

Plaintiff points out that an employee of the Social Security Administration interviewed Plaintiff on September 9, 2009 and recorded his observations that Plaintiff had difficulty hearing and was wearing eyeglasses, and a hearing aid in his right ear. (Pl. Br. 10) (citing R. 172-73). Plaintiff argues that the fact that Plaintiff has difficulty hearing and wears a hearing aid in one ear "directly conflicts the ALJ's conclusion Plaintiff can hear normal conversation," and does not support the ALJ's credibility finding. <u>Id.</u> (citing R. 24). He then cites Social Security regulations and rulings which require an ALJ to consider information from third parties, and claims that the ALJ's failure in this case to consider, or at least mention, the employee's observations was error.

Id. 11-14. The Commissioner points out that Plaintiff cites no authority for the proposition that an agency form completed by an agency employee constitutes third-party testimony that must be discussed by the ALJ. She argues that even if one assumes that the ALJ has a duty to discuss the agency employee's observations, the error in failing to discuss them is harmless because the observations do not include limitations beyond those already included in the RFC assessed by the ALJ, and there is no indication that the observations would change the ALJ's credibility analysis.

The Tenth Circuit has had the opportunity to consider the Commissioner's duty to consider third-party opinion evidence. Blea, 466 F.3d at 914-15; Adams v. Chater, 93 F.3d 712, 715 (10th Cir. 1996). In Adams, the court "decline[d] claimant's invitation to adopt a rule requiring an ALJ to make specific written findings of each witness's credibility, particularly where the written decision reflects that the ALJ considered the testimony." 93 F.3d at 715. The Adams court found "that the ALJ considered the testimony of claimant's wife in making his decision because the ALJ specifically referred to it in his written opinion," and the court found no error in the ALJ's failure to make specific, written findings regarding that testimony. Id. Thirteen years later, the Tenth Circuit confirmed the rule that an ALJ is not required to make specific written findings regarding third-party testimony so long as the written decision reflects that the ALJ considered that testimony. Blea, 466 F.3d at 915.

In Blea, the plaintiff argued that remand was necessary because the ALJ failed to discuss or consider the lay testimony of the plaintiff's wife. Blea, 466 F.3d at 914. The

Commissioner's decision in <u>Blea</u> did not mention any particulars of Mrs. Blea's testimony, and never even mentioned that she had testified regarding the nature and severity of her husband's impairments. Id. at 914. The Commissioner asserted in <u>Blea</u> that there was no reversible error because the ALJ is not required to make written findings about each witness's credibility. Id. The court noted that the Commissioner had stated only part of the rule in this circuit and corrected the Commissioner, "[i]n actuality, the ALJ is not required to make specific written findings of credibility only if 'the written decision reflects that the ALJ considered the testimony.'" Id. at 915 (quoting <u>Adams</u>, 93 F.3d at 715). The <u>Blea</u> court noted that the ALJ had not mentioned Mrs. Blea's testimony or referred to the substance of her testimony anywhere in the written decision, and concluded that "it is not at all clear that the ALJ considered Mrs. Blea's testimony in making his decision." Id. (internal quotation marks, brackets, and citation omitted). Therefore, the case was remanded for the Commissioner to consider Mrs. Blea's testimony properly. Id.

The law in the Tenth Circuit is clear with regard to opinion testimony or statements from lay witnesses such as spouses, parents, friends, and neighbors. The decision must reflect that the ALJ included the opinion in his consideration of disability, but he need not specify the particular weight accorded to that opinion.

As Plaintiff suggests, an agency employee interviewed Plaintiff on September 9, 2009, and recorded his observations in a "Disability Report - Field Office." (R. 170-73). In that report, the employee answered "Yes" that Plaintiff had difficulties with hearing.

(R. 172). However, he also explained that observation, stating that "clmt [(claimant)] did not appear to have any limitations in the short interview we had together. he [sic] did wear glasses and an [sic] hearing aid in his right ear." (R. 172).

There are several problems with Plaintiff's allegation of error in the ALJ's failing to discuss the agency employee's observations. First, and most importantly, the agency employee simply did not express an opinion regarding any limitations in Plaintiff's abilities. To be sure, he expressed that Plaintiff has "difficulty" hearing--at least to the extent that difficulty is reflected in the fact that Plaintiff wore a hearing aid in one ear. However, he also noted that no limitations appeared during his interview with Plaintiff. In context, the report reveals that Plaintiff was wearing a hearing aid in his right ear, but that (perhaps because he was wearing the hearing aid) he did not have any limitations in hearing during the interview. Thus, the employee expressed no opinion regarding limitations which the ALJ might have been required to consider and discuss. To the extent Plaintiff asserts that wearing a hearing aid by itself is a symptom requiring consideration by the ALJ, the ALJ specifically considered the fact that Plaintiff has hearing loss and wears a hearing aid. (R. 23). However, he determined that Plaintiff's hearing loss is not severe because he "does not have significant difficulty with conversational speech recognition," and because he had "not presented evidence his hearing loss more than minimally affects his ability to perform basic work related activities." (R. 23). The ALJ stated that he had considered the non-severe hearing impairment, and consequently restricted Plaintiff from constant exposure to loud

13

background noise.  Id.  Second, even if the field office disability report contained an opinion regarding limitations in Plaintiff's hearing, Plaintiff does not demonstrate that such an opinion qualifies as a third-party opinion for which the ALJ must provide specific evidence that he had considered the opinion pursuant to the law in the Tenth Circuit.

Finally, contrary to Plaintiff's argument, the agency employee's observation that Plaintiff wears a hearing aid in his right ear does not conflict with the ALJ's finding that Plaintiff "does not have significant difficulty with conversational speech recognition."  Id. In fact, the agency employee's recognition that Plaintiff wore a hearing aid, when considered in conjunction with the employee's statement that Plaintiff "did not appear to have any limitations," supports the ALJ's finding that Plaintiff does not have significant difficulty with conversational speech recognition.  The court finds no error in the ALJ's failure to discuss the observations of the agency employee.

## IV.   Medical-Vocational Guidelines

Plaintiff asserts that the claimant's age on the date of the Commissioner's final decision governs the question of age when applying the Medical-Vocational Guidelines (the Grids), and that at the time of the final decision in this case he was "within six months of turning 55 years old." (Pl. Br. 15-16).  Plaintiff argues that the ALJ found that Plaintiff was a "person closely approaching advanced age," (51-54 years old) but did not discuss or consider whether he should apply the Grids for a person of "advanced age" (55 years old or over) in this case, and thereby erred in mechanically applying the age categories contrary to the requirements of 20 C.F.R. § 404.1563(b).  Id. at 16-17 (citing

Damian v. Astrue, No. 06-1132-JTM, 2007 U.S. Dist. LEXIS 38796, *10 (D. Kan. Mar. 8, 2007) (borderline situation where claimant was within six months of next age category); Cox v. Apfel, No. 98-7039, 1998 WL 864118, *4 (10th Cir. Dec. 14, 1998) (same)). The Commissioner argues that the ALJ properly applied the age categories in his application of the Grids. She acknowledges that application of the Grids to this case would require a finding of "disabled" if Plaintiff were a person on advanced age, but argues that when the decision was made in this case Plaintiff was more than six months (201 days, in fact) from his 55th birthday. (Comm'r Br. 9-10). She asserts that it is necessary to draw lines between categories in social welfare programs, and that there are no fixed guidelines regarding when a borderline situation exists. She asserts that an individual within six months of the next age category might be in a borderline situation, whereas a person within seven months is not. Id. at 11 (citing Lambert v. Chater, 96 F.3d 469, 470 (10th Cir. 1996) (claimant seven months short of the next category was not in a borderline situation); and Cox, 1998 WL 864118, at *4 (ALJ erred in failing to consider a borderline situation where claimant was within six months of the next age category)).

The court agrees with the Commissioner that this is not a borderline situation, and therefore it was not error to fail to consider the next age category. As the Commissioner argues, at the time of the decision here Plaintiff was within seven months but not within six months of his fifty-fifth birthday. As the Commissioner asserts, drawing arbitrary lines is permissible in situations such as presented here. Califano v. Arzavorian, 439 U.S. 170, 174 (1978). However, the Commissioner has stated that she will not apply the Grids

15

mechanically in a borderline situation, 20 C.F.R. § 404.1563(b), and the rulings define a borderline situation as "when there would be a shift in results caused by the passage of a few days or months." Soc. Sec. Ruling (SSR) 82-46c, 1982 WL 31427, at *6. The Tenth Circuit accepted the framework established by the Commissioner, and cited cases holding that both ten months and seven months was not within the borderline. Daniels v. Apfel, 154 F.3d 1129, 1133 (10th Cir. 1998) (citing Lambert, 96 F.3d at 470 (seven months)); and Underwood v. Bowen, 828 F.2d 1081, 1082 (5th Cir. 1987) (ten months)). In Daniels, the court held that the plaintiff's age (within 65 days of the advanced age category) presented a borderline situation. Although this court is reluctant to hold that within six months of the next age category is always a borderline situation, whereas greater than six months is never a borderline situation, it is sufficient to note that in this case Plaintiff points to no record evidence other than age suggesting that his ability to adapt is less than the level established under the grids for persons of his age, and that Plaintiff points to no case holding that a borderline situation exists in a situation such as this where the claimant's age is greater than six months from the next age category. Moreover a period greater than six months is greater than half a year and cannot be easily characterized as "a few days or months." Plaintiff has shown no error in the ALJ's application of the Grids in this case.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the final decision of the Commissioner.

Dated this 10th day of December 2013, at Kansas City, Kansas.

                                                s:/ John W. Lungstrum
                                                **John W. Lungstrum**
                                                **United States District Judge**